1              UNITED STATES DISTRICT COURT

2           FOR THE WESTERN DISTRICT OF TEXAS

3                    EL PASO DIVISION

4

5    UNITED STATES OF AMERICA    )  No. EP-12-CR-2106-DB
                                 )
6    vs.                         )  El Paso, Texas
                                 )
7    MARCO ANTONIO DELGADO       )  May 14, 2013

8

9                    STATUS CONFERENCE

10

11

12   A P P E A R A N C E S:

13   FOR THE GOVERNMENT:   MS. JUANITA FIELDEN &
                           MS. ANNA E. ARREOLA
14                         Assistant United States Attorneys
                           700 E. San Antonio, Suite 200
15                         El Paso, Texas  79901

16

17   FOR THE DEFENDANT:    MR. RAY VELARDE
                           Attorney at Law
                           1216 Montana
18                         El Paso, Texas  79901

19

20   FOR THE DEFENDANT:    MR. RICHARD ESPER
                           Attorney at Law
21                         801 N. El Paso, Second Floor
                           El Paso, Texas  79902

22

23

24        Proceedings reported by stenotype.  Transcript produced by

25   computer-aided transcription.

 1                 (Defendant present; open court.)

 2                 THE COURT:  The clerk will call the case.

 3                 THE CLERK:  EP-12-CR-2106, Marco Antonio Delgado.

 4                 MS. FIELDEN:  Good morning, Your Honor.  Juanita

 5       Fielden and Anna Arreola for the Government.  We're ready.

 6                 MR. VELARDE:  Judge Briones, good morning.  Ray

 7       Velarde on behalf of Marco Antonio Delgado.

 8                 MR. ESPER:  Good morning, Judge Briones.  Richard

 9       Esper on behalf of Marco Delgado.

10                 THE COURT:  Do you have anything to bring up, Counsel?

11                 MR. ESPER:  Yes, we do, Your Honor.  Over the past few

12       weeks it has become increasingly clear to both Mr. Velarde and

13       myself that we feel that an evaluation is necessary for

14       Mr. Delgado.

15                 THE COURT:  Let me tell you, I've had this happen

16       before right before trial and I've never granted it, okay?

17                 MR. ESPER:  I understand.

18                 THE COURT:  It better be a damn good motion, I'll tell

19       you right off the bat.  This thing has been set for months.

20       You've been consulting your client for months.

21                 MR. ESPER:  We have, Your Honor.  This is something

22       that's developed over the last two weeks and I think part of it

23       is incarceration, part of is maybe other matters.  But I feel

24       we would be remiss if we didn't, and I know it's at the

25       eleventh hour, but it's just become necessary.

1             MR. VELARDE:  Your Honor, in that regard, without

2      going into too much detail, I can represent to the Court that I

3      have had extensive communication with Mr. Delgado.  As much as

4      I would like to say that it's been productive, it hasn't, but

5      being the person that I am, I didn't want to give up.

6             THE COURT:  Why did I suspect that a time was going to

7      come to hold this trial off?

8             MR. VELARDE:  Well --

9             THE COURT:  Why did I always suspect that?  I

10     suspected it.  Well, file your motion, file it under seal if

11     you have to, but it better be damn good, because we're

12     preparing for trial for Monday.

13            MR. ESPER:  I'll have it filed by the end of the day,

14     Your Honor.

15            THE COURT:  I'm sorry?

16            MR. ESPER:  I'll have it filed by the end of the day.

17            MR. VELARDE:  And also, Your Honor, it's also come to

18     our attention that at least some of the transcripts, which are

19     going to become necessary in the trial of this case, have not

20     been prepared.  So consequently that's also another issue that

21     needs to be --

22            THE COURT:  Ms. Fielden?

23            MS. FIELDEN:  Your Honor, I only have three

24     transcripts that are not completed and ready, but they will be

25     ready by --

1           THE COURT:  Talk into the microphone.

2           MS. FIELDEN:  I'm sorry.

3           THE COURT:  I can hear you better.

4           MS. FIELDEN:  Yes, sir.  I provided a proposed exhibit

5    list.  I have three transcripts that as of today are not ready.

6    They will be ready by end of the week, so it's Exhibit 33A, 39A

7    and 56.  We'll be ready and the transcripts will be ready.  We

8    won't be able to do this preliminary hearing with respect to

9    those three transcripts, but by Monday, they will be done.

10          THE COURT:  Is the Government going to use these

11   transcripts during the trial?

12          MS. FIELDEN:  Yes, sir.  There's -- now, one of them

13   has not been provided.  The tapes have been provided.

14          THE COURT:  Now, they've been provided though.

15   They've been provided with the actual tape, right?

16          MS. FIELDEN:  Right, the tapes have been provided, but

17   we've had -- we had an original translation done that we were

18   not satisfied with.  We've had that one re-done and now we're

19   reviewing them.  One tape, I believe it's number 56 -- is that

20   correct -- was not -- the agency that did it, did not do that

21   tape, so that's the one that we're actually waiting on.

22          The other ones have all been provided in some way,

23   shape or form, albeit not in, you know, the format that we want

24   to have them for trial, but they've been provided all of the

25   tapes, and at least some draft transcripts during the course of

1    the discovery except for the transcript on 56, because we

2    didn't have it.  We didn't realize we had it.  But we will have

3    it by trial time.  If we go to trial on Monday, we will have it

4    by then, and as soon as I get it, I will provide it to them.

5              THE COURT:  Okay.

6              MS. FIELDEN:  I've made everything available.  They're

7    welcome to come over to the office and look at everything.  I

8    handed them today the Wells Fargo business record affidavit for

9    those three accounts.  Photographs have been made available to

10   them.

11             THE COURT:  Ruben --

12             Hold on.

13             -- we're getting a bunch of feedback.

14             MS. FIELDEN:  I'm sorry, am I talking too close or too

15   far?

16             (Microphone levels being adjusted.)

17             THE CLERK:  Okay.

18             MS. FIELDEN:  But with respect to the evaluation,

19   Your Honor, I've had extensive discussions, primarily with

20   Mr. Velarde because Mr. Esper has been in trial in Austin.  We

21   have extended a plea agreement that encompassed both cases that

22   are in your court.  In my opinion, it's a very generous plea

23   agreement.  I don't know whether this Defendant really

24   comprehends how serious the charges are against him, so I'm not

25   going to oppose their request for an evaluation, a psychiatric

1    evaluation of this individual, but if the Court doesn't grant

2    it, the Government is going to be ready to go.

3            THE COURT:  Well, then let's get ready to -- let's

4    presume that we're going to go on Monday.

5            MS. FIELDEN:  Sure.  Okay.

6            THE COURT:  What do you have to present?  Are you

7    going to put on testimony?

8            MS. FIELDEN:  My understanding, except for those three

9    exhibits, the Defense is not going to have an objection to any

10   of the recordings or the transcripts.  Now, I'll have to ask

11   them --

12           THE COURT:  No, we have --

13           MS. FIELDEN:  I've got 50 of them.

14           THE COURT:  We have video recordings.

15           MS. FIELDEN:  I have one video recording and the rest

16   of them are audio recordings.

17           THE COURT:  Okay.  How many videos?

18           MS. FIELDEN:  Sir?

19           THE COURT:  How many videos?

20           MS. FIELDEN:  One video.  And the rest of them are

21   audio recordings with the transcripts.

22           THE COURT:  How many?

23           MS. FIELDEN:  Well, we have --

24           THE COURT:  Are these telephone conversations?

25           MS. FIELDEN:  Sir?

```
1              THE COURT:  Are these telephone conversations?

2              MS. FIELDEN:  Yes, sir.

3              MR. VELARDE:  Yes, sir.

4              THE COURT:  Or hidden mic.?

5              MS. FIELDEN:  And some of them are by consensual

6    meeting recordings.

7              THE COURT:  Okay.

8              MS. FIELDEN:  Most of them are telephonic recordings.

9    I have agents here if we need to qualify them, the ones who did

10   the quality control on all of them except those -- the three

11   that I mentioned.  Photographs that we have that we were going

12   to submit in evidence.  They've all been presented to Defense.

13             MR. ESPER:  There's a motion --

14             THE COURT:  Let's go by the way you have them in your

15   motion.  First of all, photographs.

16             MS. FIELDEN:  Photographs.  Those would be exhibits --

17   one exhibit is Exhibit Number 8, that's the photograph of one

18   of the co-conspirators Lillian De La Cancha and Marco Delgado.

19   That was taken from the public record and they have been

20   identified or were identified in that.

21             THE COURT:  Number 8?

22             MS. FIELDEN:  Number 8.

23             THE COURT:  Is there any objection to Number 8,

24   Counsel?

25             MR. VELARDE:  No, Your Honor.
```

1          MR. ESPER:  No, Your Honor.

2          MS. FIELDEN:  Okay.  Then we begin with the

3    photographs 11 through 28.  Those are photographs that were

4    taken on September 7th, the day the $1 million was delivered to

5    the Defendant Delgado here in El Paso.  Case agent, Josh

6    Frye [phoen.] -- I don't know what happened to him -- took

7    those photographs and he would be able to testify as to the

8    authenticity and that they truly and accurately reflect what

9    they purport to reflect as it appeared on September the 7th,

10   2007, and they have been made available to the Defense.

11         THE COURT:  Are there going to be any objections to

12   those, Counsel?

13         MR. VELARDE:  No, Your Honor.

14         MR. ESPER:  No, Your Honor.

15         THE COURT:  No objections on 11 through 28.

16         Next?

17         MS. FIELDEN:  I believe those are the only -- those

18   are the photographs, Your Honor.

19         THE COURT:  Photos, okay.

20         Now, audio -- let's go to the audio first.  That's

21   what you have here.

22         MS. FIELDEN:  Okay.  There are a series of audio

23   recordings, some that were made in Atlanta, some that were made

24   in El Paso, that occurred in what I call the first transaction,

25   the 2007 transaction.  Those would be exhibits, the audio is

1    the 30, the number and then the 30A is the transcript.

2              The 2007 transactions are Exhibits 30 through 58, 58A.

3              THE COURT:  30 through 58 and 30 through 58A?

4              MR. ESPER:  Correct.

5              MS. FIELDEN:  Yes, sir.  Those involve the initial

6    $1 million seizure.  Some of those conversations are between

7    the informant who will testify and some of those conversations

8    are between an undercover officer acting as a money launderer

9    and he is talking with co-defendants, and some of the

10   conversations are recordings that were done in a period of time

11   when the Defendant was allegedly --

12             THE COURT:  Wait a minute.  Co-defendant or --

13             MR. VELARDE:  Co-conspirator.

14             THE COURT:  Co-conspirator?

15             MS. FIELDEN:  I'm sorry.  Unindicted co-conspirators.

16   And then some of the -- let me rephrase that.  Between the

17   undercover officer and unindicted co-conspirators where he's

18   portrayed himself as a person who can help recover the money,

19   basically another money launderer and they're discussing

20   additional transactions.

21             Then there are some recordings that were made at a

22   time when this Defendant was allegedly cooperating and those

23   conversations are between he and some of the cooperators -- or

24   some of the co-conspirators and were made at the direction and

25   under the control of agents -- law enforcement agents here, I

1    believe, in El Paso and in Atlanta.

2              THE COURT:  Counsel, is there any going to be any

3    objection to 30 through 58?

4              MS. FIELDEN:  And the transcripts.

5              MR. VELARDE:  Your Honor, I haven't had a chance to

6    visit with Ms. Fielden; however, we are missing Exhibit

7    Numbers 32, Number 39, and also I had a note here that we were

8    missing Exhibit Number 40, as well as Exhibit Number 65.

9              MS. FIELDEN:  Oh, wait.  Wait.  Okay.  39 and 32 are

10   the two transcripts from this transaction that are not

11   completed.

12             Now you said 40?

13             MR. VELARDE:  40.

14             MS. FIELDEN:  I have 40.  I have 42 as being blank.  I

15   have 40 as a transaction occurring September the 10th of 2007

16   at 8:56 a.m., between the Defendant --

17             MR. VELARDE:  What time?

18             MS. FIELDEN:  8:56 a.m.

19             MR. VELARDE:  No, that's 8:43.

20             We'll work with her, Your Honor.  But also while we're

21   on that note, I received Exhibit Number 38A --

22             THE COURT:  Let me tell you, at this point there's no

23   objection?

24             MR. VELARDE:  No, no objection.

25             THE COURT:  Okay.  I'm not going to admit them now.

```
1              MR. VELARDE:  There might be --
2              THE COURT:  Okay, due to the fact that we may not go
3     to trial, I'm not going to admit anything now.  I'm just going
4     to note that you're not objecting.
5              MR. ESPER:  Okay.
6              THE COURT:  I'll give you an opportunity to if you
7     have good reason to object to bring it up.
8              MR. VELARDE:  Yes, sir.
9              MR. ESPER:  Other than those three exhibits,
10    Your Honor, we don't have objections and if we do, we'll lodge
11    it more specifically.
12             (Attorneys conferring.)
13             THE COURT:  Okay.  That is -- those are the audio.
14             MS. FIELDEN:  Those are the audio.  One video out of
15    that transaction, which is --
16             MR. VELARDE:  32.
17             MS. FIELDEN:  -- 32, I believe.
18             MR. VELARDE:  No objection.
19             MR. ESPER:  We have no objection to that, Your Honor.
20             MR. VELARDE:  Well --
21             MS. FIELDEN:  And that was one made -- that is the one
22    that takes place on September 7th here in El Paso, and it
23    involves the Defendant, the cooperator and then it's a stop by
24    Texas DPS troopers who basically re-arrested them for the
25    money.
```

1              (Attorneys conferring.)

2              MR. VELARDE:  We reviewed that, Your Honor, but we

3    couldn't understand a lot of what was being videotaped.  The --

4    at least the audio, so subject to --

5              THE COURT:  Let me tell you what I'm putting down as

6    to 32, 39 and 40:  "No objection now; will give opportunity to

7    object after review."

8              MR. ESPER:  Thank you, Your Honor.

9              THE COURT:  As to the other ones, no objection.

10   Again, I'm not admitting them now, but I'm just noting.  It's

11   not necessary, in other words, to lay a foundation for them at

12   this time.

13             MS. FIELDEN:  Yes, sir.

14             THE COURT:  Okay.  Video?

15             MS. FIELDEN:  Video is that one, I believe, it's

16   number 32.

17             THE COURT:  32?

18             MS. FIELDEN:  Is that correct?

19             MR. VELARDE:  Yes, sir.

20             THE COURT:  I'm sorry, what's the number?

21             MS. FIELDEN:  32.  It's number 32 and that's one of

22   the transcripts that is still being finalized.

23             THE COURT:  Is that the only video?

24             MS. FIELDEN:  That is the only video, yes, sir.

25             THE COURT:  Okay.  No objection now; will give you an

1    opportunity to object after you review it.

2            MR. ESPER:  Thank you, Your Honor.

3            THE COURT:  And the transcripts.

4            MS. FIELDEN:  Now, with respect -- that is all the

5    evidence with respect to what I call the Atlanta seizure, the

6    2007 seizure of the $1 million.

7            Then in 2008 there's another seizure.  Now there are

8    two photographs of the money and that's Exhibits 59 and 60

9    which --

10           THE COURT:  Okay.  What are we going to name those?

11   Which seizure?

12           MS. FIELDEN:  2008 in Chicago.

13           THE COURT:  Okay.  2008 Chicago seizure.

14           MS. FIELDEN:  Yes, sir.

15           THE COURT:  Numbers?  What numbers?

16           MS. FIELDEN:  59 and 60.

17           THE COURT:  Have those been made available, everything

18   and the transcript?

19           MS. FIELDEN:  Well, those are just the photographs.  I

20   thought I sent it to them --

21           THE COURT:  Oh, these are photos?

22           MS. FIELDEN:  Sir?

23           THE COURT:  These are photos?

24           MS. FIELDEN:  These two are photos, okay.  And if they

25   don't have them, I'll make them available to them.  I thought I

1  sent it to them.

2            And then we have recordings --

3            THE COURT:  Wait a minute.  Any objection?

4            MR. VELARDE:  No, sir.  Well, subject to viewing them

5  because we haven't seen them.

6            THE COURT:  Okay.

7            MS. FIELDEN:  Then we have additional recordings that

8  were made through the Chicago seizure and that's going to be

9  Government's 61 through 78A.  Almost all of these are going to

10  be with the informant.  In fact, I believe all of these --

11            THE COURT:  Are these all audio?

12            MS. FIELDEN:  Excuse me?

13            THE COURT:  Audio?

14            MS. FIELDEN:  Audio.  No video on these.

15            THE COURT:  They've all been provided to the Defense?

16            MS. FIELDEN:  Yes, sir, they have except for 56.

17            (Attorneys conferring.)

18            MR. VELARDE:  We haven't received Number 65 and 71,

19  but we'll review them.

20            THE COURT:  Okay.  Let me put it down on my notes.  65

21  and 71?

22            MR. VELARDE:  Yes, sir.

23            MS. FIELDEN:  And it may be, Mr. Velarde, we've

24  re-numbered some of these, so it could be that you have them

25  and we just -- we've had to re-number some of them.

```
1               (Attorneys confer.)

2               THE COURT:  Okay.  What else do we have?

3               MS. FIELDEN:  We have some e-mails that were

4    originally sent to Marco Delgado and then he either forwarded

5    them to Victor Pimental -- well, he forwarded all of them.  I

6    believe that we are going to have those entered through

7    Mr. Pimental.

8               THE COURT:  E-mails?

9               MS. FIELDEN:  E-mails, yes, sir.

10              THE COURT:  Number?

11              MS. FIELDEN:  Those would be 80 through 87.  And then

12   in addition -- and that's the e-mails.  And they have

13   translations with them.

14              And then finally there are some IRS records which I

15   have listed --

16              THE COURT:  Okay.  Let me go to the e-mails.

17              Any objections at this time?

18              MR. VELARDE:  There might be as to one of them,

19   Your Honor.  An email from a co-conspirator to Marco Delgado,

20   which goes into an extraneous that would be challenged and

21   objected to.

22              THE COURT:  Do you have a number?

23              MR. VELARDE:  I don't have a number, but I'm sure

24   it's--

25              MS. FIELDEN:  I believe it is going to be 82.  And
```

1    that is an email that was initially initiated by Marco Delgado

2    to a co-conspirator and then she replies to the Defendant and

3    then he forwarded it to Pimental, and I believe it's on

4    February the 3rd of 2009.

5              THE COURT:  Went to him and he forwarded it?

6              MS. FIELDEN:  Well, he initially -- the Defendant

7    initially sent to the co-conspirator a little blurb.  She

8    responds to him and then he responds -- no.  She responds to

9    him and the Defendant forwarded it to the cooperator.

10             THE COURT:  Okay.  So it may have some extraneous?

11             MR. VELARDE:  Yes, sir.

12             MR. ESPER:  Yes, sir.

13             MS. FIELDEN:  It discusses -- allegedly di- -- it

14   discusses the alleged murder of one of the other

15   co-conspirators.

16             THE COURT:  Well, better redact it.  If I let it in,

17   that part is not going to come in.

18             MR. VELARDE:  Cannot come --

19             MS. FIELDEN:  It was the murder that was -- what

20   the -- the murder was because of the Defendant's actions.

21             MR. VELARDE:  Allegedly.

22             MS. FIELDEN:  According to the co-conspirator's

23   statement to him.

24             MR. VELARDE:  Our objection, Your Honor --

25             THE COURT:  Any mention of that in the Indictment?

1          MR. VELARDE:  No.

2          MS. FIELDEN:  No.

3          THE COURT:  Well, we'll take it up.  That has to do

4    with Number 82?

5          MS. FIELDEN:  Yes, sir.

6          Going along with those e-mails, there are two

7    self-proving affidavits from -- that are Exhibits 1, 1A, 2, and

8    2A that are from --

9          THE COURT:  1, 1A, 2 and 2A?

10         MS. FIELDEN:  Yes, sir.  Those are the -- those are

11   from Google and from AOL.  AOL is the Internet provider for the

12   Defendant and Google is the Internet provider for another one

13   of the co-conspirators, not the one mentioned in that

14   particular Exhibit 82, but a different co-conspirator.

15         THE COURT:  Okay.  Is there going to be any objection

16   to those, Counsel?

17         MR. VELARDE:  I don't foresee one.

18         THE COURT:  "No objection now," okay, in my notes.

19         Go ahead.

20         MS. FIELDEN:  And then finally, we have some IRS

21   records, the Defendant's IRS records from 2007 and 2008.  I

22   believe we have those certified copies that we got from the

23   IRS.

24         THE COURT:  Numbers?

25         MS. FIELDEN:  Sir?

1           THE COURT:  Numbers?

2           MS. FIELDEN:  That would be 7A and 7B.

3           THE COURT:  IRS certified records.

4           MS. FIELDEN:  Yes, sir.  2007, 2008 basically 1040

5    forms for the Defendant.

6           THE COURT:  Do you anticipate an objection, Counsel?

7           MR. VELARDE:  No, Your Honor.

8           MR. ESPER:  No, Your Honor.

9           THE COURT:  Okay.  What else do we have, Ms. Fielden?

10          MS. FIELDEN:  Finally, Exhibits 9 and 10.  9 is going

11   to be a settlement agreement that the cooperator will testify

12   was provided to him by the Defendant as a means for justifying

13   the $1 million.  It has a particular cause number on it.

14          10 is a certified -- or certified copies of the actual

15   true and correct lawsuit that is filed under this same number

16   that came from the El Paso County Courthouse and those are

17   certified documents.

18          THE COURT:  Certified by -- certified by the County,

19   El Paso.

20          MS. FIELDEN:  Yes, sir.  The county clerk.

21          THE COURT:  Or district clerk?  It should be the

22   district clerk.

23          MS. FIELDEN:  A moment, Your Honor.

24          (Ms. Fielden confers with co-counsel.)

25          If they're not done by the district clerk we will get

1    them done by the district clerk.

2          MR. ESPER:  Your Honor, the first lawsuit that was

3    apparently in the hands of the cooperator at the time that he

4    was stopped in Atlanta is a fictitious lawsuit.  It's not a --

5          THE COURT:  I understand that from the Indictment.

6          MR. ESPER:  Yeah.  And so therefore I don't know how

7    that could be certified, but --

8          MS. FIELDEN:  No.  No.  That is -- I'm not saying that

9    one is certified.

10          MR. ESPER:  Okay.  Okay.

11          MS. FIELDEN:  I'm saying that number 10, we have the

12    actual --

13          MR. ESPER:  The actual -- with the right case number

14    that corresponds to the case number that's on the fictitious

15    lawsuit.

16          MS. FIELDEN:  Yes, that is correct.

17          MR. ESPER:  Okay.

18          THE COURT:  I see.  You anticipate an objection now?

19          MR. VELARDE:  No, sir.

20          MR. ESPER:  No, Your Honor.

21          THE COURT:  What else do we have?

22          MS. FIELDEN:  Let's see.  Did we discuss the Wells

23    Fargo affidavits?  Did we discuss those?

24          THE COURT:  No.  We only discussed 1, 1A, 2 and 2A.

25    Who are they from?

1            MS. FIELDEN:  Sir?

2            THE COURT:  They're business records, I think?

3            MS. FIELDEN:  Yes, sir.

4            THE COURT:  From?

5            MS. FIELDEN:  1, 1A, 2 and 2A -- 1 is from -- 1 and 1A

6      -- 1 is the Certificate of Authenticity from Google.

7            THE COURT:  Oh, that's right.

8            THE CLERK:  And 1A is the actual documents that we

9      received for --

10           THE COURT:  That's right.  Yeah, you did mention them.

11     Google.  And the other one was --

12           MS. FIELDEN:  AOL, which is the Defendant's.

13           THE COURT:  Okay.

14           MS. FIELDEN:  Okay.  Then Exhibits 3, 3A, 3B and 3C.

15     3 is a business records affidavit from Wells Fargo.

16           3A is the record of an IOLTA account for the Defendant

17     that was used to deposit some of the money.

18           THE COURT:  Wells Fargo too?

19           MS. FIELDEN:  They're all from Wells Fargo.  All -- 3A

20     and 3B and 3C are all Wells Fargo accounts and they are all

21     covered under the same affidavit.

22           And then 3B and 3C are two separate accounts of the

23     Defendant's paramour where some of the money was also run

24     through.

25           THE COURT:  Also Wells Fargo?

```
1              MS. FIELDEN:  Also Wells Fargo.

2              THE COURT:  Business record?

3              MR. ESPER:  Correct.

4              THE COURT:  Do you anticipate an objection now,

5    Counsel, on that?

6              MR. ESPER:  No, they're business records affidavits.

7              THE COURT:  Okay.

8              MS. FIELDEN:  And then Number 4 is a Wells Fargo

9    receipt that was obtained by the cooperator when he actually

10   deposited money into the IOLTA account of the Defendant.  So

11   there's not a business record affidavit for that.  That's

12   just--

13             THE COURT:  He'll testify.

14             MS. FIELDEN:  He'll testify.

15             THE COURT:  I presume he's going to testify?

16             MS. FIELDEN:  He is.

17             THE COURT:  I'll let you object --

18             MR. VELARDE:  There's no objection.

19             THE COURT:  -- at the time.

20             MR. VELARDE:  There won't be an objection.

21             THE COURT:  Okay.

22             MS. FIELDEN:  Okay.  Let me check with my co-counsel

23   to make sure I covered everything.

24             (Ms. Fielden conferring with co-counsel.)

25             MS. FIELDEN:  I believe that's everything, Your Honor.
```

1          THE COURT:  Counsel, as I've indicated, I'm not

2     admitting them now.  If anything comes up, I'll let you object.

3          MR. ESPER:  Thank you.

4          THE COURT:  Okay.

5          MR. ESPER:  Your Honor, there was a --

6          THE COURT:  I've got my notes.  But before you bring

7     them in, you obviously will have to move for admission,

8     Ms. Fielden.

9          MS. FIELDEN:  Yes, sir.

10          MR. ESPER:  Your Honor, the Government -- one other

11     matter.  The Government had filed a Motion in Limine --

12          THE COURT:  Yes.

13          MR. ESPER:  -- which we filed a response to.  I think

14     most of her requests are --

15          THE COURT:  Standard.  They're not objectionable.

16          MR. ESPER:  Standard stuff.  I mean --

17          THE COURT:  You had one that you responded to.

18          MR. ESPER:  Yes, Your Honor.  And I think that the

19     Government does not want the Defense to cross-examine witnesses

20     concerning the Defendant's cooperation and what transpired

21     after that, and certainly I think that any time a witness --

22     any time a person cooperates, there certainly can be imputed to

23     that Defendant either guilty knowledge or perhaps that the

24     person was not aware of what was going on.  And I think it goes

25     towards one of the elements of the offense, which is knowledge,

 1   and I think Counsel would be deprived and the Defendant would

 2   be deprived of the right to a fair trial and to the effective

 3   cross-examination of witnesses if we weren't allowed to go into

 4   the circumstances surrounding the cooperation, what transpired

 5   after that over the -- I don't know how many months

 6   thereafter -- and I think it is relevant to and determinative

 7   of one of the elements of the offense which is his state of

 8   mind.

 9            THE COURT:  I'm not going to make a ruling at this

10   time, but I'm not going to grant Paragraph 1D of the Motion in

11   Limine.

12            MR. ESPER:  1D.

13            MR. VELARDE:  1D.

14            MR. ESPER:  Correct.

15            MR. VELARDE:  Your Honor, as the Court is well aware,

16   there's also another case pending --

17            THE COURT:  Right.

18            MR. VELARDE:  -- alleged in a separate Indictment.  We

19   would request that no reference be made as to the matters

20   involved in that Indictment in connection with the prosecution

21   of this case.  I guess we could urge that by way of a motion in

22   limine of sorts at this point.

23            MS. FIELDEN:  We don't to intend to offer it in our

24   case in chief, but certainly if the Defendant takes the stand,

25   I believe we are entitled to a full cross-examination of him.

```
1              THE COURT:  Well, he hasn't been convicted,
2    Ms. Fielden, on the other one.
3              MS. FIELDEN:  There's a lot of things that he's done
4    that he hasn't been convicted of, Your Honor.
5              THE COURT:  Well -- well, I will make --
6              MS. FIELDEN:  I understand.
7              THE COURT:  For the time being, I'm going to grant the
8    Motion in Limine.  You will approach if anything like that
9    comes up.  If you want to bring anything in, you'll approach.
10             MS. FIELDEN:  Okay.
11             THE COURT:  Okay?
12             MS. FIELDEN:  But if he places his credibility in
13   evidence, I mean, you know, he comes in and said I'm a good,
14   honest man.
15             THE COURT:  Oh, I'm sure Counsel is going to advise
16   him on that, Ms. Fielden.
17             MS. FIELDEN:  I'm not sure -- well, okay, Your Honor.
18   I believe that's one of the reasons why the Government agrees
19   that the psychiatric evaluation probably would be beneficial.
20             THE COURT:  Well, I'll take that up when it comes up,
21   Counsel, but file it as soon as possible.
22             MR. ESPER:  I will, Your Honor.
23             THE COURT:  If it does go to trial, do you anticipate
24   it's going to take the whole week?
25             MS. FIELDEN:  Oh, yes, sir.
```

```
 1              THE COURT:  For your part?

 2              MS. FIELDEN:  Yes, sir.

 3              THE COURT:  For your part?

 4              MS. FIELDEN:  Yes, sir.

 5              THE COURT:  So we could be going into the second week?

 6              MR. VELARDE:  Very likely.

 7              MS. FIELDEN:  Is Friday --

 8              THE COURT:  Friday is not a furlough Friday.

 9              MS. FIELDEN:  It is not?

10              THE COURT:  No.  Furlough Friday is this week, right,

11      Ruben?

12              THE CLERK:  This week.

13              THE COURT:  Yeah.  Furlough Friday is this week, not

14      next week.

15              MR. ESPER:  And, of course, next week -- Monday is a

16      federal holiday.

17              MS. FIELDEN:  No, the following week is.

18              MR. ESPER:  The week of the 27th, I'm sorry.

19              MS. FIELDEN:  I think if we pick a jury in the morning

20      and start that afternoon, I believe we can be finished in that

21      one -- in that week.  Whether it will be able to go to the jury

22      that week, I don't know, but I believe the evidence will be

23      completed by that time.

24              THE COURT:  So I can tell the jury more likely they'll

25      be here until the second week?
```

1            MS. FIELDEN:  I think we should err on the side of

2       caution, yes, sir, and tell them that.

3            MR. ESPER:  I would think if it went into a second

4       week, Your Honor, maybe a day, two days at the most.

5            THE COURT:  Okay.  Do you-all have anything you want

6       to preadmit or get a ruling or get at least an indication from

7       the Government whether they are going to object on anything?

8            MR. VELARDE:  No, not at this point.

9            MR. ESPER:  Not at this point, Your Honor, but we will

10      apprise the Court in advance so if the Court needs to

11      reschedule something before Monday morning.

12           THE COURT:  Okay.  How many -- I don't think I've got

13      a witness list, but how many witnesses do you anticipate you'll

14      put on?

15           MS. FIELDEN:  I think we have seven.  I anticipate

16      we're going to start out with the cooperator.  He's probably

17      going to be on the stand most of Monday or starting Monday and

18      most of Tuesday.  We have a couple of agents that are going to

19      be fairly short witnesses.  We have one -- the undercover agent

20      will be very -- probably very long, and then we'll probably end

21      up -- assuming that we have no objections with any of the --

22      any of the admissibility of the tapes -- and we don't have to

23      put on all of that, we should be able to move fairly quickly.

24           THE COURT:  Is Ms. Arreola going to be second chair

25      with you?

1          MS. FIELDEN:  Yes, sir.

2          THE COURT:  Okay.  Anything else we need to take up

3  now?

4          MR. ESPER:  No, Your Honor.

5          MR. VELARDE:  No.

6          THE COURT:  For the Government?

7          MS. FIELDEN:  No, Your Honor.

8          THE COURT:  Defense?

9          MR. VELARDE:  Not at this point.

10         THE COURT:  Not at this point.  Okay.

11         MR. VELARDE:  Thank you very much, Your Honor.

12         MR. ESPER:  Thank you, Your Honor.

13         THE COURT:  Okay.  We'll be in recess then.  You may

14  be excused.

15                          *  *  *  *  *

16

17

18

19

20

21

22

23

24

25

1                            CERTIFICATION

2

3        I certify that the foregoing is a correct transcript from

4   the record of proceedings in the above-entitled matter.  I

5   further certify that the transcript fees and format comply with

6   those prescribed by the Court and the Judicial Conference of

7   the United States.

8

9   Date:  August 30, 2013

10                                  /s/ Maria del Socorro Briggs

11                                  Maria del Socorro Briggs

12

13

14

15

16

17

18

19

20

21

22

23

24

25