```
 1                  UNITED STATES DISTRICT COURT
 2                FOR THE WESTERN DISTRICT OF TEXAS
 3                         EL PASO DIVISION
 4
 5  UNITED STATES OF AMERICA    )  No. EP-12-CR-2106-DB
                                )
 6                              )
    vs.                         )  El Paso, Texas
 7                              )
    MARCO ANTONIO DELGADO       )  January 24, 2014
 8
 9
10                             SENTENCING
11
12  A P P E A R A N C E S:
13  FOR THE GOVERNMENT:   MS. DEBRA P. KANOF &
                          MS. ANNA E. ARREOLA
14                        Assistant United States Attorneys
                          700 E. San Antonio, Suite 200
15                        El Paso, Texas   79901
16
    FOR THE DEFENDANT:    MR. RAY VELARDE
17                        Attorney at Law
                          1216 Montana
18                        El Paso, Texas   79901
19
20  FOR THE DEFENDANT:    MR. RICHARD ESPER
                          Attorney at Law
21                        801 N. El Paso, Second Floor
                          El Paso, Texas   79902
22
23
24      Proceedings reported by stenotype.  Transcript produced by
25  computer-aided transcription.
```

```
1              THE COURT:  The clerk will call the case.
2              THE CLERK:  EP-12-CR-2106, Marco Antonio Delgado.
3              MS. KANOF:  Good morning, Your Honor.  Debra Kanof and
4    Anna Arreola for the United States.  We're ready for
5    sentencing.
6              MR. ESPER:  Good morning, Judge Briones.  Richard
7    Esper and Ray Velarde on behalf of the Defendant Marco Delgado.
8              THE COURT:  You are Marco Antonio Delgado?
9              THE DEFENDANT:  I am, sir.
10             THE COURT:  Gentlemen, Mr. Velarde, Mr. Esper, I need
11   to inquire whether you did review the Presentence Report with
12   Mr. Delgado?
13             MR. ESPER:  We did, Your Honor.
14             THE COURT:  You had a variety of objections.  Really,
15   applies to every upper adjustment that was made probably.
16             MR. ESPER:  Correct, Your Honor.
17             THE COURT:  Did you receive the Government's response
18   this morning, Counsel?
19             MR. VELARDE:  No.
20             MR. ESPER:  No.
21             MS. KANOF:  Your Honor, we filed it electronically
22   with copies to the Defendant last night.
23             THE COURT:  I'm sorry?
24             MS. KANOF:  We filed it electronically with copies --
25   with notice to the Defendant last night.
```

1           THE COURT:  Yeah.  There is a response, gentlemen,
2  which --
3           MS. KANOF:  We have copies if you would like.
4           THE COURT:  -- I mostly agree with.
5           MR. VELARDE:  Judge, can we, just out of an abundance
6  of caution, have -- seek a couple of minutes so that we can
7  review this with Mr. Delgado?
8           THE COURT:  Go ahead.
9           MR. VELARDE:  Thank you.  Could we sit at counsel
10 table, Judge?
11          THE COURT:  You may.  Let me give you a few minutes.
12          We'll be in recess for the next five minutes.
13          (Recess taken; open court.)
14          THE COURT:  Mr. Velarde or Mr. Esper, which one of you
15 is going to address the objections?
16          MR. ESPER:  I will, Your Honor.  And I'll be very
17 brief, Your Honor, I think the -- certainly the Court is
18 required by a preponderance of the evidence to find -- make
19 findings with respect to these objections.
20          The obstruction of justice, I don't believe is
21 appropriate.  I think the Defendant has a right to testify.  If
22 a jury doesn't believe him, that doesn't automatically mean
23 that he's committed perjury, and we don't feel that the
24 adjustment is appropriate here.  The jury did not believe,
25 obviously, Mr. Delgado, but I don't believe that his testimony

1   rose to the level of committing perjury and so we don't feel
2   that that adjustment should apply.
3          In addition, that would send a chilling effect to any
4   Defendant who wanted to testify that if the jury didn't believe
5   him that an obstruction of justice would apply.
6          With respect to knowledge of the laundered funds, I
7   believe that adjustment 2S1.1(b)(1) kind of overlaps with
8   2S1.(b)(2)(C), which is the business of laundered funds, and I
9   think therefore that if one adjustment is applicable, then the
10  other one should not be applicable.  In other words, I don't
11  think the two should be combined together.
12         In fact, the Government in their footnote says in the
13  event the Court does not find that the Defendant was in the
14  business of laundered funds, he should nevertheless receive a
15  four-level increase pursuant to 2S1.1(b)(2)(B), so I don't
16  believe both upward adjustments are appropriate.
17         The special skill, I believe the -- that analogy is
18  correct.  If the Court finds that a special skill -- that an
19  adjustment under 3B1.1 aggravating role is applied, then you
20  don't apply to the other.  And so from that standpoint, I think
21  the adjustments that we have objected to should be sustained.
22  I also firmly believe that the increase for 600 over
23  400 million is not supported by the evidence.  I mean, there
24  was -- I know the Court sees that in many cases, people are
25  talking a lot of like what I call "smack" about how much can be

1    produced, how much can be laundered, how many kilos of drugs
2    can be produced and the reality is is what reasonably could be
3    produced or what was reasonably believable.  And I don't
4    believe that, certainly the evidence doesn't establish that,
5    $600 million was available to be laundered.  The evidence
6    showed that $1,050,000 was what was laundered in this case
7    regardless of what discussions may have been had for further
8    amounts.  There was nothing more than a $1,050,000, and I think
9    that should establish a much lower offense level than that that
10   is recommended in the PSI and that which the Government submits
11   should be considered by the Court and the objections or their
12   response that they filed last night.
13          THE COURT:  Well, let me tell you, in most cases, the
14   PSR is taken from the law enforcement reports.  Here his
15   testimony came out during trial, Counsel, especially on the
16   relevant conduct.  It was testified to here.
17          MR. VELARDE:  Your Honor, if I may be heard with
18   regards --
19          THE COURT:  Oh, wait a minute.  Huh?
20          MR. VELARDE:  If we can be -- with regards to the
21   relevant conduct, there was a lot of testimony from the
22   undercover agent out of Atlanta who engaged the co-conspirators
23   over the telephone calls over a number of days, and there was
24   some loose talk about money but nothing ever came to fruition,
25   which --

1          THE COURT:  Well, it has to come to fruition, which --
2          MR. VELARDE:  The money that was --
3          THE COURT:  It had to come to fruition to be -- to be
4   --
5          MR. VELARDE:  Any additional funds other than the
6   money --
7          THE COURT:  It's what was intended, Mr. Velarde.
8          MR. VELARDE:  Pardon me?
9          THE COURT:  It is what was intended.
10         MR. VELARDE:  It was intended, Your Honor, but then at
11  the end of the day nothing panned out because our --
12         THE COURT:  That's all that's required that it be
13  intended.  That's what they intended to launder.
14         MR. VELARDE:  And in that regard, Your Honor, I think
15  that that discussion was just a lot of puffing so that they
16  could get the undercover agent, who was masquerading as
17  somebody who was going to help him get the money, so that he
18  would get more involved in securing the money that was seized.
19  Had there been 600 million, I think that there would have been
20  a more aggressive effort on the part of ICE to get to the sum
21  and substance of that representation.  Nothing was ever --
22  nothing was ever developed.
23         THE COURT:  Your objection is overruled.  You have my
24  ruling.
25         The only one that gives me -- the only two, I would

say, that give me some kind of a problem is the abuse of position of trust and the obstruction of justice.  I think -- I think applying both would -- might be subject to an appeal, so if I have to go on only one of them, I'm going on the abuse of position of trust, takes out the objections you may have as to obstruction of justice including the testimony of the Defendant, which I -- I happen to believe was perjury and I think everybody that heard it here believed the same thing.  But to take it out of appeal, I'm not going to apply it, but he will get the two-level upper adjustment for abuse of position of trust.

He will also get the six-level -- well, let me go over the guidelines.  He starts off at a 38 based on over $400 million intended to be laundered.  From there, he gets the six-level upper adjustment for -- he knew or believed that they were proceeds from the distribution of a controlled substance.  He gets an added four levels because he was in the business of laundering.  He gets an added two levels for abuse of position of trust and an added four levels for aggravated role.  He does not get the two levels for obstruction of justice.  That will make it 54 with a Criminal History Category of I, obviously.  It goes down to 43 which ordinarily would be life; however, the statutory maximum is 20 years.  Quite a difference between 20 years and life, so that's my ruling, Counsel.

Obviously, if you disagree with it, you have a right

1    to appeal it, so do you wish to speak on behalf of Mr. Delgado
2    before I pronounce sentence?
3            MR. VELARDE:  I believe Mr. Delgado would like to
4    share some words with the Court.
5            THE COURT:  Mr. Delgado, I'll hear from you.
6            THE DEFENDANT:  Thank you, Your Honor.  I stand before
7    this Court convicted by a jury of my peers and am ready to
8    accept the consequences.
9            I deeply regret and deeply apologize for exercising
10   poor judgment and take full responsibility for all my actions,
11   for all the suffering this prosecution has caused my family and
12   friends.
13           In the 15 months that I've been incarcerated,
14   including six months of which were in solitary confinement,
15   there was not one moment when my family wasn't there to support
16   me.  I'm blessed and I'm grateful for that.
17           I'm also grateful to this Court for the opportunity to
18   have my trial and for the adjudication of that trial to have
19   been fair.  We're at a point in time in the history of this
20   country where when a defendant tries to exercise their right to
21   a trial translates into the repression of those trials.
22           We've got overreaching prosecutors who in a thuggishly
23   simple attempt at rewriting or perverting the Constitution seek
24   to act as accuser, judges, and juries by intimidating the
25   defendants into signing their rights away through unilateral

1  Draconian plea agreements.  Which in my case, by the way, they
2  weren't even willing to put in writing had it not been by your
3  court order.
4      I feel that having exercised my right to a trial I'm
5  the exception unfortunately, not the rule especially when you
6  consider the threats that are exercised for anybody that wishes
7  to pursue a jury trial to defend his rights of spending the
8  rest of your life in jail.
9      I value my liberty more than anything, but not at the
10 cost of my rights and not at the cost of my dignity, and at all
11 times your court has respected both.
12     In a system that needs thorough revamping this has
13 stood out at a beacon of decency.
14     I was advised by friends that at this hearing I should
15 remain silent and allow my attorneys to speak, but at times
16 silence is a lie, for silence can be interpreted as
17 acquiescence and I cannot do that.
18     The Prosecution and the agents in this case tried and
19 would like to create a new legal system where a Defendant
20 shouldn't defend himself.  A creation or a negative creation in
21 their own image and likeness devoid of integrity, the witnesses
22 are paid, like they were paid in my case, where agents perjure
23 themselves like they perjured them in my case, and where they
24 highjacked the narrative of events in such dishonest fashion
25 that only those afraid of the truth believe them.

1       The Prosecution won and they will continue to win
2  because they have the brute force to do so, but they will never
3  convince because for to persuade, they lack what's needed:  The
4  integrity, respect for rights, and respect for our
5  Constitution.
6       Justice should not be a piece of playacting.  I
7  consider it futile to exhort them to consider their obligations
8  as public servants.  Thank you, Your Honor.
9       THE COURT:  It is the order of the Court that the
10  Defendant, Marco Antonio Delgado, is hereby committed to the
11  custody of the United States Bureau of Prisons to be imprisoned
12  for a term of 240 months.
13       Upon release from confinement, he shall be placed on
14  reporting supervised release for a term of three years.
15       While on supervised release, he shall comply with the
16  standard conditions that have been adopted by the Court.
17       He will pay a fine in the amount of $25,000.  This sum
18  should be paid immediately.  He shall notify the United States
19  Attorney for the district within 30 days of any change of
20  mailing or residence address that occurs while any portion of
21  the sum remains unpaid.
22       Any fine balance that remains unpaid at the
23  commencement of the term of supervised release shall be paid on
24  a schedule to be approved by the Court.
25       Mr. Delgado will also pay the special assessment of

```
1    $100.
2            Do you wish for me to enter a recommendation,
3    gentlemen?
4            MR. ESPER:  Your Honor, we would recommend a number of
5    things.  Number one, we would recommend -- ask the Court to
6    recommend a facility as close to El Paso, Texas, area as
7    possible depending upon what his security classification is.
8            Number two, we would ask the Court, based on what
9    information is contained in the Presentence Investigation
10   Report, that the Court recommend a 500-hour RDAP program for
11   Mr. Delgado.
12           And finally, three, Your Honor, with respect and for
13   purposes of appellate review, we would object to the sentence
14   that was imposed as being procedurally and factually
15   unreasonable and greater than necessary under the
16   circumstances.
17           THE COURT:  Your objections are overruled.
18           Do you have something?
19           MS. KANOF:  Your Honor, in preparation for the trial
20   and in talking to the individuals that knew the Defendant,
21   there is absolutely no indication that he drank alcohol.
22           THE COURT:  I'm sorry, what?
23           MS. KANOF:  I'm sorry?
24           THE COURT:  I didn't hear your last part.
25           MS. KANOF:  I know that in the PSR he's made a
```

1  representation to the probation department that he qualifies
2  for the 500-hour program, but we, in pretrialing witnesses,
3  were told the contrary, that he does not abuse substances of
4  any kind including alcohol.
5          THE COURT:  If he wants to take it, I'm going to
6  recommend it, and it is reflected in the report.
7          I will recommend that Mr. Marco Antonio Delgado be put
8  at a facility as close to El Paso as possible, and I will
9  recommend the comprehensive drug treatment program.
10         Another matter, Counsel, I know that you-all had a
11 Superseding Indictment on the other case.
12         MS. KANOF:  We did, Your Honor.  On Wednesday the
13 Grand Jury issued a Superseding Indictment.
14         THE COURT:  How much does that change from the
15 original?
16         MS. KANOF:  Well, grammatically it's changed
17 dramatically, but it adds an additional wire fraud count that
18 was not in the original Indictment.  It eliminated some
19 concealment based 1956 and added three 1957 counts.
20         MR. ESPER:  Your Honor, for the record we had --
21         MS. KANOF:  AUSA Arreola is reminding me to explain to
22 the Court the additional wire fraud is based on a scheme that
23 was not present in the original Indictment, other piece that is
24 a different scheme and will require different witnesses than
25 otherwise.

1       MR. ESPER:  Your Honor, we did consult with Ms. Kanof
2  and we knew this Indictment was going to be superseded.  We had
3  discussed the fact that Mr. Velarde and I and discussed with
4  our client that we were going to file a Motion for Continuance
5  after the superseding Indictment was handed down, which was the
6  day before yesterday.
7       We are aware of the February 24th, 2014, trial
8  setting, so we will be filing a Motion for Continuance.
9  Subject, of course, to the Court's docket, we had discussed if
10 the Court were inclined to grant the motion, which we are
11 urging the Court to do so, if the Court could accommodate the
12 parties by setting the trial sometime the first week in April
13 so as not to continue the matter an extraordinary length of
14 time.
15      THE COURT:  Okay.  I will -- file your motion and I
16 will consider it sometime in April.
17      MR. VELARDE:  Thank you.
18      THE COURT:  The record will reflect that I'm handing
19 Counsel a letter.  You're reminded that in the event of a
20 Notice of Appeal is filed, you will within 14 days designate
21 the portions of the proceedings that you deem necessary for the
22 court reporter to prepare.  And if the Defendant is indigent,
23 he will be provided with a record at no cost.
24      MR. ESPER:  Your Honor, a Notice of Appeal is already
25 being prepared by our office and because Counsel -- because the

1  Defendant is indigent, we will be filing a Motion to Withdraw
2  and for the Court to refer the matter to the United States
3  magistrate judge for appointment of counsel.  That will be
4  filed either today or Monday.
5          THE COURT:  Okay.  Anything else, Counsel?
6          MS. KANOF:  No, Your Honor.  Other than asking the
7  Court's permission if we can discuss with the court deputy the
8  date because I do have one conflict in April.
9          THE COURT:  Well, I have a conflict also.
10         How long do you anticipate that trial will take?  It
11 will certainly go more than a week.
12         MS. KANOF:  Yes.  Approximately two weeks, everything
13 included:  Opening, closing, deliberation.
14         THE COURT:  Okay.  Okay.  You have permission to talk
15 to my deputy.
16         MS. KANOF:  Thank you, Your Honor.
17         MR. ESPER:  Thank you, Your Honor.
18         MR. VELARDE:  Thank you, Judge.
19         THE COURT:  We'll be in recess.
20                         * * * *
21
22
23
24
25

CERTIFICATION

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. I further certify that the transcript fees and format comply with those prescribed by the Court and the Judicial Conference of the United States.

Date: March 24, 2014

/s/ Maria del Socorro Briggs

Maria del Socorro Briggs