UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| MARCO ANTONIO DELGADO, | § | |
| Reg. No. 06804-380, | § | |
|    Movant, | § | |
| | § | **EP-20-CV-100-DCG** |
| v. | § | **EP-12-CR-2106-DCG-1** |
| | § | |
| UNITED STATES OF AMERICA, | § | |
|    Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Marco Antonio Delgado challenges his 192-month sentence though a motion under 28 U.S.C. § 2255.  Mot. to Vacate, ECF No. 187.[1]  The United States of America (the Government) opposes the motion.  Gov't's Resp., ECF No. 196.  The Court will deny the motion for the reasons discussed below.  The Court will additionally deny Delgado a certificate of appealability.

## BACKGROUND AND PROCEDURAL HISTORY

Delgado—a former attorney in El Paso, Texas—came to the attention of Immigration and Customs Enforcement (ICE) agents in September of 2007 after police officers in Georgia stopped a vehicle driven by an associate—Victor Ignacio Pimentel—and discovered $1 million in cash inside.  United States v. Delgado, 608 F. App'x 230, 231 (5th Cir. 2015).

After his detention, Pimentel volunteered to ICE agents that Delgado gave him court documents to explain the currency came from a court settlement.  Id.  But Pimentel admitted the documents were fraudulent and he was on a trial run to determine if Delgado and his co-

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in EP-12-CR-2106-DCG-1. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

conspirators could launder large sums of money.   Id.

ICE agents arranged for Pimentel to deliver the currency to Delgado in El Paso.   Id. They intervened after Pimentel transferred the money to Delgado.   Id.   They obtained Delgado's agreement to cooperate.   Id.   They learned the money-laundering scheme involved Delgado, Pimentel, Lillian de la Concha,[2] Francisco Fernandez, Pedro Mendoza–Meneses, Isidro Rubio–Vega, and Chuy (last name unknown).   Id.   They also learned the co-conspirators planned to transfer approximately $600 million from the United States to Mexico. Id. at 232.   They persuaded Delgado to participate in a controlled delivery of currency to Mendoza–Meneses and Rubio–Vega.   Id.

Pimentel continued to cooperate with law enforcement officials.   Id.   He provided emails between Delgado and De La Concha.   Id.   The emails—which were sent between June 2006 and August 2007—discussed the group's money laundering scheme.   Id.   In July 2008, Pimentel informed ICE agents that Delgado planned to transport $100,000 in illegal drug proceeds from Chicago to El Paso.   Id.   Pimentel explained this was a trial run to determine if he and Delgado could transport $10 million to Mexico for a drug cartel.   Id.

ICE agents met Pimentel near Chicago and monitored his receipt of the first $50,000 in cash.   Id.   They observed as the cash was eventually deposited in Delgado's bank account in El Paso.   Id.

As the result of the ICE investigation, a grand jury indicted Delgado for conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).   Indictment, ECF No. 3.

Pimentel was called by the Government as a witness at Delgado's trial.   Trial Tr., vol 1,

---

[2] De la Concha is the ex-wife of former Mexican President Vincente Fox.

141:10–244:13, ECF No. 121, through Trial Tr., vol. 2, 3:23–214:13, ECF No. 122. During cross-examination by Delgado's counsel, Pimentel agreed that after the Georgia incident, law enforcement agents returned his passport and told him they would not prosecute him as long as he stayed out of trouble. Trial Tr., vol. 2, 122:7–122:24. Pimentel also claimed that he signed a written agreement to cooperate with ICE. *Id*., at 191:4–191:7. During recross-examination, Pimentel maintained that he had not been paid by the Government for his cooperation:

> Q. Have you been paid any money to testify in this case?
>
> A. No.
>
> Q. HSI has not paid you any money?
>
> A. No.
>
> MS. KANOF: Excuse me, Your Honor. Paid you money to testify in this case? I would object to the character of the question.
>
> MR. ESPER: I'll rephrase it.
>
> BY MR. ESPER:
>
> Q. Have you been made any money by Homeland Security or ICE for your cooperation in this matter and in other matters?
>
> A. No.

*Id.* at 213:24–214:10.

The Government had disclosed to Delgado's attorneys before trial that ICE paid Pimentel $8,500 for his assistance during the investigation. Gov't's Resp., Ex. B (Letter to Delgado's Counsel, Information on Victor Pimentel, May 10, 2013), ECF No. 196-2. Consequently, the following exchange occurred concerning the Government's payments to Pimentel during the

3

cross-examination of ICE Special Agent Joshua Fray by Delgado's counsel:

>Q. Okay.  Before I go any further with that controlled delivery, I want to clarify something.  Victor Pimentel was actually paid monies or reimbursed monies by ICE, was he not?
>
>A. He has been paid by ICE, yes, sir.
>
>Q. Okay.  And how much has he been paid?
>
>A. I believe it's a total of $8500.  Somewhere over $8,000.
>
>Q. Okay.  Now, is that payment in connection with this investigation, or monies that were reimbursed to him, or both?
>
>MS. ARREOLA:  Objection, Your Honor.  Lack of foundation.
>
>THE COURT: Overruled.
>
>A. Well, it's monies that have been paid to him.  We -- we can't direct him as to what he's going to do with the money.  I was involved with paying him $5,000.  And I believe that my co-case agent, Gabriel Aguirre, and others before me, had paid him some money related to travel expenses.  And …
>
>BY MR. ESPER:
>
>Q. Okay.  So whenever he was testifying here in court, however clumsily I asked the question, he denied on both occasions that he received any money from investigative agencies, correct?
>
>A. Yes, I believe that's correct.
>
>Q. Okay.  So he wasn't being truthful when he said, I haven't received any money?
>
>MS. ARREOLA: Objection, Your Honor.
>
>THE COURT: Overruled.
>
>A. I do not know what Victor Pimentel's -- I don't know if he was lying to you or not being truthful.  I don't -- I don't know what Victor Pimentel's intent was.
>
>BY MR. ESPER:

4

> Q. Well, you were here, and he said, No, I haven't been paid anything.
>
> A. I was here.   I did hear him say that.
>
> Q. And the truth is, he has been paid money?
>
> A. He has been paid, yes, sir.

Trial Tr., vol. 4, 21:18–23:3.

Based on Fray's testimony, Delgado's counsel could legitimately categorize Pimentel as a liar during his closing argument:

> [W]ho is the person that says that this is drug proceeds or that this is a money laundering operation?   Victor Pimentel.
>
> This is a guy, ladies and gentlemen, who is -- who lies about having received money in connection with this -- the investigation in this case.

Trial Tr., vol. 6, 36, ECF No. 126.

The jury, after hearing the evidence and arguments of counsel, found Delgado guilty as charged.   Verdict, ECF No. 100.

The Court determined Delgado's base offense level was 43 and his guideline sentencing range was twenty years.   Statement of Reasons 1, ECF No. 110.   It accordingly sentenced Delgado to 240 months' imprisonment.   J. Crim. Case 2, ECF No. 109.

Delgado challenged the Court's calculation of his sentence in his direct appeal. Delgado, 608 F. App'x at 231.   He argued that "he should not have received several sentencing enhancements."   Id.

The Fifth Circuit Court of Appeals agreed with Delgado.   Id.   It vacated his sentence and remanded his case to the Court for resentencing.   Id. at 238.

On remand, the Court determined Delgado's total offense level was 37 with a guideline

5

sentencing range of 210 to 240 months' imprisonment. Statement of Reasons 1, ECF No. 167. But the Court sentenced Delgado below the guideline range to a 192-month term of imprisonment. Am. J. Crim. Case 2, ECF No 166. The Court granted the downward variance because Delgado "was not very successful at money laundering when compared to other individuals who are more culpable than the defendant, and the circumstances of the defendant require this adjustment." Statement of Reasons 4.

The Fifth Circuit affirmed the judgment after it concluded "Delgado . . . failed to rebut the presumption of reasonableness that applies to his below-guidelines sentence." United States v. Delgado, 747 F. App'x 252, 254 (5th Cir. 2019).

Delgado now alleges (1) the Government violated his due process rights by failing to correct Pimentel's false testimony, (2) his trial counsel was ineffective for failing to ask for a new trial, (3) to the extent the Government may argue his trial counsel did not properly preserve the violation of the holding in Napue v. Illinois, 360 U.S. 264 (1959), his counsel was ineffective for failing to do so, and (4) his appellate counsel was ineffective for failing to argue the Government violated the holding in Napue by permitting Pimentel to testify falsely regarding compensation for his cooperation. Mot. to Vacate, ECF No. 187, pp. 4–8. Delgado asks the Court to vacate his conviction and grant him a new trial. *Id*. at 12.

## APPLICABLE LAW

A court is normally "entitled to presume that the defendant stands fairly and finally convicted" after the defendant has exhausted or waived any right to appeal. United States v. Willis, 273 F.3d 592, 595 (5th Cir. 2001) (citing United States v. Frady, 456 U.S. 152, 164 (1982)). It may, however, consider a defendant's collateral attack on a federal sentence under

6

limited circumstances through a motion brought pursuant to 28 U.S.C. § 2255.  Pack v. Yusuff, 218 F.3d 448, 451 (5th Cir. 2000); Cox v. Warden, 911 F.2d 1111, 1113 (5th Cir. 1990).   These limited circumstances include when (1) the "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack."   United States v. Seyfert, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).   The reviewing court requires a movant to establish his claims of error by a preponderance of the evidence.   Wright v. United States, 624 F.2d 557, 558 (5th Cir. 1980) (citing United States v. Kastenbaum, 613 F.2d 86, 89 (5th Cir. 1980)).   If the reviewing court concludes that the movant's motion is meritorious, it must "vacate and set the judgment aside and . . . discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."   28 U.S.C. § 2255(b).

## ANALYSIS

### A.  Prosecutorial Misconduct

Delgado first alleges the Government violated his due process rights by failing to correct Pimentel's false testimony during his cross-examination by trial counsel.   Mot. to Vacate 4.   He asserts "Pimentel, without question, testified falsely about having been paid for his cooperation.  The Government knew Pimentel's testimony was false . . . and Pimentel's testimony was material."   Id. at 16 (citing Banks v. Dretke, 540 U.S. 668, 699–703 (2004) (finding that non-disclosure of paid-informant status of key prosecution witness was material).   He observes that during cross-examination of another government witness—ICE Agent Joshua Frey—it became clear that Pimentel had received $8,500 in payments from ICE.   Id. at 14.

7

A movant may not rely on a § 2255 motion as a substitute for a direct appeal. Frady, 456 U.S. at 165; United States v. Shaid, 937 F.2d 228, 231 (5th Cir. 1991). A movant must either (1) demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error; or (2) show that he is "actually innocent" of the crime for which he was convicted when raising issues of jurisdictional or constitutional magnitude for the first time in a motion seeking collateral relief. United States v. Torres, 163 F.3d 909, 911 (5th Cir. 1999). The cause-and-actual-prejudice standard is "significantly more rigorous than even the plain error standard . . . applied on direct appeal." United States v. Gaudet, 81 F.3d 585, 589 (5th Cir. 1996). If the movant does not demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error, then he is procedurally barred from attacking his conviction or sentence through a § 2255 motion. United States v. Drobny, 955 F.2d 990, 994–95 (5th Cir. 1992).

Delgado knew about Pimentel's false testimony at the time of his trial. He did not raise the issue of Pimentel's false testimony in two direct appeals. He has not shown that "some objective factor external to the defense" prevented him from timely raising the claim, which he now advances in his § 2255 motion, in his direct appeals. Murray v. Carrier, 477 U.S. 478, 488 (1986). Since Delgado's trial counsel successfully impeached Pimentel's testimony through Special Agent Frey, he used Pimentel's false testimony to his advantage. Thus, Delgado cannot show " 'that the errors at his trial . . . worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.' " Shaid, 937 F.2d at 231 (quoting Frady, 456 U.S. at 170). Consequently, Delgado is procedurally barred from attacking the Government's purported error.

Even if Delgado's claim was not procedurally barred, the Court would not grant him relief on this claim.

The Supreme Court observed in Giglio v. United States, 405 U.S. 150, 153 (1972), that "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." Id. at 153. It explained in Napue v. People of State of Ill., 360 U.S. 264 (1959), that "[t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Id. at 269. Hence, a claim that the Government knowingly offered false testimony—or failed to correct false testimony when it was presented—is typically referred to as a "Napue violation." United States v. Wall, 389 F.3d 457, 472 (5th Cir. 2004).

"[A] new trial based upon a Napue violation is proper . . . if (1) the statements in question are shown to be actually false; (2) the prosecution knew that they were false; and (3) the statements were material." United States v. O'Keefe, 128 F.3d 885, 893 (5th Cir.1997). The "touchstone of materiality is a 'reasonable probability' of a different result." Kyles v. Whitley, 514 U.S. 419, 434 (1995). Indeed, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Id.

Pimentel's statements in question were false and the prosecution knew that they were false. However, the statements were not material—and did not constitute a Napue violation— for two independent reasons. First, Pimentel's statements were elicited by Delgado's counsel during recross-examination. " '[W]hen the defense elicits the alleged perjury on cross-

9

examination, no material falsehood has occurred because the government has not itself knowingly presented false testimony.' " United States v. Stanford, 823 F.3d 814, 840 (5th Cir. 2016) (quoting O'Keefe, 128 F.3d at 894). If Pimentel's testimony was wrong—as Delgado correctly observes—it was Delgado's duty to correct the testimony. Second, "[t]his is not a case in which the false testimony remained uncorrected throughout the trial." *United States v. Grosz*, 76 F.3d 1318, 1328 (5th Cir. 1996). Instead, Delgado's counsel refuted Pimentel's false statements through Special Agent Frey's testimony. And since Delgado's attorney successfully impeached Pimentel's testimony during Special Agent Frey's cross-examination—and was able to argue during closing that Pimentel was a liar—Delgado cannot now show a 'reasonable probability' of a different result if the Government had corrected the testimony.

In Banks—the decision relied upon by Delgado—"the State withheld evidence that would have allowed Banks to discredit two essential prosecution witnesses." Banks, 540 U.S. at 675. In this case, the Government provided Delgado's counsel with the evidence he needed to discredit Pimentel. Gov't's Resp., Ex. B.

In the light of the foregoing, the Court cannot say that there was "any reasonable likelihood" that the jury's judgment was affected by the Government's omissions. Consequently, the Court finds Delgado cannot show that he failed to receive a fair trial. The Court further finds Delgado is not entitled to relief on this claim.

### B. Ineffective Assistance of Trial Counsel

Delgado maintains his trial counsel was ineffective for failing to ask for a new trial and for failing to preserve the Napue violation. Mot. to Vacate 2, 7. He argues "[t]he Government's Napue violation at trial related to its failure to correct Pimentel's false testimony

was a sufficient reason to warrant a new trial, in the interest of justice." Id. at 19 (citing Fed. R. Crim. P. 33(a)). He contends if his "counsel had presented this issue to the Court, there is a reasonable probability the Court would have granted the motion given the flagrant Napue violation." Id.

The Sixth Amendment guarantees an accused the right to "the assistance of counsel for his defense" in all criminal prosecutions. U.S. CONST. amend. VI. This right includes "the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).

A movant's "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under [§] 2255." Massaro v. United States, 538 U.S. 500, 509 (2003). Once raised, a movant's ineffective-assistance claim it is analyzed under the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail, a movant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 689–94.

To establish deficient performance, a movant must show that his counsel's assistance fell " 'below an objective standard of reasonableness.' " United States v. Conley, 349 F.3d 837, 841 (5th Cir. 2003) (quoting Strickland, 466 U.S. at 688). This means a movant must show that (1) counsel's performance was outside the broad range of what is considered reasonable assistance and (2) this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474–75 (5th Cir. 2001). In assessing if a particular attorney's performance was constitutionally deficient, "a court must indulge a strong

11

presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

"[T]o establish prejudice, a '[movant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " Wiggins v. Smith, 539 U.S. 510, 534 (2003) (quoting Strickland, 466 U.S. at 694). "[I]neffective assistance of counsel during a sentencing hearing can result in Strickland prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.' " Lafler v. Cooper, 566 U.S. 156, 165 (2012) (quoting Glover v. United States, 531 U.S. 198, 203 (2001)).

If a movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir.1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

Here, Delgado cannot—for the reasons set forth in the previous section—establish a Napue violation which prejudiced his cause. Simply stated, Delgado's counsel successfully impeached Pimentel's false testimony—and brought Pimentel's credibility into question— through his cross-examination of Special Agent Frey. His counsel accordingly could not show that Pimentel's false testimony was a sufficient reason to warrant a new trial. And his counsel

was not required "to file frivolous motions or make frivolous objections."   Green v. Johnson, 160 F.3d 1029, 1037–1042 (5th Cir. 1998).

Under the circumstances in this case, Delgado cannot overcome the strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance.   He cannot show there is a reasonable probability that, but for counsel's purported errors, the result of the proceeding would have been different.   Thus, he cannot show his counsel's performance was either deficient or prejudiced his cause.   Indeed, he cannot establish either prong of Strickland.   Therefore, he cannot meet his burden of showing that his trial counsel provided constitutionally ineffective assistance.

### C.  Ineffective Assistance of Appellate Counsel

Delgado claims his appellate counsel was ineffective for failing to assert the Government violated Napue by permitting Pimentel to testify falsely regarding compensation for his cooperation.   Mot. to Vacate 7.   He contends "[t]his was a '[s]olid, meritorious argument[] based on directly controlling precedent."   Id. at 18 (citing United States v. Reinhart, 357 F.3d 521, 525 (5th Cir. 2004)).   He concludes he "was prejudiced by appellate counsel's failure to raise this issue because there is a reasonable probability the Fifth Circuit would have vacated Delgado's conviction and remanded for a new trial had this claim been raised on appeal."   Id.

"A criminal defendant has a constitutional right to receive effective assistance of counsel on direct appeal."   United States v. Phillips, 210 F.3d 345, 348 (5th Cir. 2000).   The two-prong Strickland test applies to claims of ineffective assistance by appellate counsel.   Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).   For the first prong, a movant must "demonstrate that [appellate] counsel's representation 'fell below an objective standard of reasonableness.' "

Soffar v. Dretke, 368 F.3d 441, 472 (5th Cir. 2004) (quoting *Strickland*, 466 U.S. at 688). To meet this standard, counsel need not raise every nonfrivolous ground of appeal, but should instead present "[s]olid, meritorious arguments based on directly controlling precedent." United States v. Williamson, 183 F.3d 458, 463 (5th Cir.1999). For the second prong, a movant must "establish a 'reasonable probability that, but for [appellate] counsel's unprofessional errors, the result of the proceeding would have been different.' " Id. at 478 (quoting Strickland, 466 U.S. at 694).

For the reasons discussed above, the Court finds there was no Napue violation. Delgado's counsel successfully impeached Pimentel's false testimony through his cross-examination of Special Agent Frey. Pimentel's erroneous statements concerning his compensation for cooperating with the Government were, therefore, not material. Thus, there was no solid, meritorious argument based on directly controlling precedent to raise a Napue violation. The Fifth Circuit would likely not have vacated Delgado's conviction and remanded his case for a new trial had his Napue claim been raised in his appeals. And because it would have been frivolous for Delgado's appellate attorney to raise a meritless argument on appeal, Delgado cannot establish his appellate counsel's performance was either deficient or prejudiced his cause. Consequently, Delgado cannot meet his burden of showing his appellate counsel provided constitutionally ineffective assistance.

## CERTIFICATE OF APPEALABILITY

A movant may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial

14

of a constitutional right." Id. § 2253(c)(2). In cases where a district court rejects a movant's constitutional claims on the merits, the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (applying Slack to a certificate of appealability determination in the context of § 2255 proceedings). To warrant a certificate as to claims that a district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

Here, Delgado's motion fails because he has not identified a transgression of his constitutional rights or alleged an injury that would, if condoned, result in a complete miscarriage of justice. Additionally, reasonable jurists could not debate the Court's reasoning for the denial of his claims on substantive or procedural grounds—or find that his issues deserve encouragement to proceed. Miller El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack, 529 U.S. at 484). The Court will therefore not issue a certificate of appealability.

## CONCLUSION AND ORDER

The Court concludes after reviewing the record that Delgado's claims are without merit and that he is not entitled § 2255 relief. The Court further concludes that Delgado is not entitled to a certificate of appealability. The Court accordingly enters the following orders:

**IT IS ORDERED** that Delgado's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody (ECF No. 187) is **DENIED**, and his civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Delgado is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FURTHER ORDERED** that all pending motions in this cause, if any, are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SIGNED** on this 1st day of April 2021.

_____
**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**